934 So.2d 1263 (2006)
Ernest TILLMAN, Petitioner,
v.
STATE of Florida, Respondent.
No. SC02-717.
Supreme Court of Florida.
July 6, 2006.
*1266 James S. Purdy, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Wesley Heidt and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
PARIENTE, J.
The decision under review, Tillman v. State, 807 So.2d 106 (Fla. 5th DCA 2002), expressly and directly conflicts with Taylor v. State, 740 So.2d 89 (Fla.1st DCA 1999), on the issue of whether section 776.051(1), Florida Statutes (2005), which prohibits the use of force to resist an arrest notwithstanding the illegality of the officer's actions, extends to other types of police-citizen encounters. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We conclude that the statute, by its plain terms, applies only to arrest situations. In non-arrest cases, in order to convict a defendant under sections 784.07 and 843.01, Florida Statutes (2005),[1] which define the crimes of battery on a law enforcement officer and resisting an officer with violence, the State must prove that the officer was "engaged in the lawful performance of his or her duties" or "in the lawful execution of any legal duty."[2] In ruling on the sufficiency of the evidence to reach the jury on this element, which is not defined in either statute, trial courts should rely on the statutory and decisional law governing the particular duty in which the officer is engaged. In accord with these determinations, we approve the First District Court of Appeal's decision in Taylor and quash the Fifth District's decision in Tillman.

FACTS AND PROCEDURAL HISTORY
The Fifth District has summarized the pertinent facts in this case:
[On November 7, 1997,] Deputy Parks Duncan, Jr., was patrolling the Deerfield Subdivision when he observed 20 to 30 people standing in front of five to six houses .... Among the group of mostly Hispanic people were five black males standing in the street being loud and boisterous. Duncan approached them and asked them to return to the party. As they left, one of the black males uttered loud obscenities and threatened Officer Duncan.
Due to this threat, Duncan called for back-up. After back-up arrived, Duncan and eight to ten other officers entered the screened pool enclosure at the rear *1267 of the house where the party was occurring. At that point, Duncan ... entered to "see if I could determine who made this threat to me." ...
Deputy Timothy Henriquez testified that he responded to [the] call for backup. Duncan advised him that he had been threatened by two individuals he recognized as possible bank robbers or robbery suspects. Henriquez and other backup officers followed Duncan to the pool enclosure where Henriquez saw the two gentlemen run into the pool enclosure. Duncan pointed out Tillman and Henriquez stopped Tillman inside the pool enclosure. Tillman was wearing a "very heavy jacket" which seemed odd to Henriquez because it was not cold. Henriquez asked Tillman if he could pat him down and Tillman refused, but Henriquez patted him down anyway. Henriquez was concerned about finding weapons on Tillman because he understood that Tillman had threatened Duncan and that Duncan recognized Tillman as having "been accused, or charged at one time or another with armed robbery with weapons." Henriquez did not find any weapons on Tillman.
... Henriquez asked Tillman to sit down but Tillman refused . . . and started to walk away. Henriquez grabbed Tillman's right shoulder, at which point Tillman suddenly spun around and put Henriquez in a headlock. Henriquez attempted to remove himself from Tillman's headlock by dropping to the ground. Just then, other deputies jumped on top of Tillman and Henriquez. Tillman did not release his hold on Henriquez until he was pepper sprayed.
Tillman, 807 So.2d at 107-08.[3]
The jury found Tillman guilty of aggravated battery on a law enforcement officer pursuant to section 784.07(2)(d) and resisting an officer with violence pursuant to section 843.01. Tillman argued on appeal that the trial court erred in denying his motion for judgment of acquittal on both counts because the State failed to present prima facie evidence that the officer was engaged in the lawful execution of his dutya necessary element of both offenses. Tillman, 807 So.2d at 108.
The Fifth District affirmed Tillman's convictions and sentences. The district court acknowledged that the statutes governing the crimes charged require the State to prove that the officer was lawfully executing a legal duty at the time of the alleged battery or violent resistance. Id. However, the district court cited a line of district court cases that have interpreted section 843.01 in pari materia with section 776.051(1) to hold that the use of force in resisting an arrest by a person reasonably known to be a law enforcement officer is unlawful regardless of whether the arrest is technically illegal. Id. (citing State v. Barnard, 405 So.2d 210 (Fla. 5th DCA 1981), and Lowery v. State, 356 So.2d 1325 (Fla. 4th DCA 1978)). The Fifth District explained that it had extended this rule to the crime of battery on a law enforcement *1268 officer defined by section 784.07 and had applied it to encounters that fall short of a full-blown arrest, including illegal stops, detentions, and contacts. Id. at 109. Building on this line of precedent, the district court held that while the State must prove that the law enforcement officer was engaged in the lawful execution of a legal duty, the technical illegality of the officer's actions does not preclude a conviction of resisting with violence or battery on a law enforcement officer. Id. at 110.
The Fifth District expressly declined in this case to follow Taylor. Id. at 109. In Taylor, the First District held section 776.051(1) inapplicable in a prosecution for battery on a law enforcement officer and resisting with violence based on a defendant's violent reaction to an officer who entered the defendant's home in response to a noise complaint and attempted to lead him outside. 740 So.2d at 89-91. The First District reversed the convictions because the officer had acted unlawfully in entering the defendant's home without probable cause, permission, or exigent circumstances. Id. at 90-91. The Fifth District in this case distinguished Taylor on the ground that the officer in Tillman entered the home of another person, not the home of the defendant. The Fifth District also concluded that the patdown and detention of Tillman were less intrusive than an arrest, "so Tillman was not justified in using force to resist." Tillman, 807 So.2d at 109.
We granted review to resolve the conflict between Taylor and Tillman on the scope of section 776.051(1).

ANALYSIS

I. Statutory Provisions and Standard of Review
The issues in this case require us to construe sections 776.051(1), 784.07, and 843.01, Florida Statutes (2005). Section 776.051(1) provides:
A person is not justified in the use of force to resist an arrest by a law enforcement officer who is known, or reasonably appears, to be a law enforcement officer.
Section 784.07 enhances the penalties for crimes against law enforcement officers and other enumerated classes of public servants by reclassifying the crimes of assault and battery committed against these persons. The reclassification from misdemeanor to felony or from a lower degree of felony to a higher degree increases the authorized sentences for the crimes. Section 784.07 provides in pertinent part:
(2) Whenever any person is charged with knowingly committing an assault or battery upon a law enforcement officer, a firefighter, an emergency medical care provider, a traffic accident investigation officer ..., a traffic infraction enforcement officer ..., a parking enforcement specialist ..., or a security officer employed by the board of trustees of a community college, while the officer, firefighter, emergency medical care provider, intake officer, traffic accident investigation officer, traffic infraction enforcement officer, parking enforcement specialist, public transit employee or agent, or security officer is engaged in the lawful performance of his or her duties, the offense for which the person is charged shall be reclassified as follows:
....
(d) In the case of aggravated battery, from a felony of the second degree to a felony of the first degree.
(Emphasis supplied.) Section 843.01 defines the crime of resisting an officer with violence as follows:
Whoever knowingly and willfully resists, obstructs, or opposes any officer *1269 ... in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer . . . is guilty of a felony of the third degree ....
(Emphasis supplied.) The crime has sometimes been described inaccurately as "resisting arrest with violence." See, e.g., State v. Espinosa, 686 So.2d 1345 (Fla. 1996). However, neither the title of the statute, "Resisting an officer with violence to his or her person," nor its explicit terms limit it to arrest scenarios. Cf. N.H. v. State, 890 So.2d 514, 516 (Fla. 3d DCA 2005) (noting that title of section 843.02, which defines crime of resisting without violence, is "`resisting [an] officer,' not `resisting arrest'"). The facts of this case and Taylor demonstrate that section 843.01 encompasses resistance to actions by law enforcement officers other than arrests.
Because the issues we decide are exclusively matters of statutory construction, our review is de novo. Clines v. State, 912 So.2d 550, 555 (Fla.2005). In construing statutes, we first consider the plain meaning of the language used. Id.; State v. Ruiz, 863 So.2d 1205, 1209 (Fla. 2003). When the language is unambiguous and conveys a clear and definite meaning, that meaning controls unless it leads to a result that is either unreasonable or clearly contrary to legislative intent. State v. Burris, 875 So.2d 408, 410 (Fla.2004).

II. Construction of Section 776.051(1)
Section 776.051(1) forecloses the defense of justifiable use of force by a defendant who resists an arrest by a law enforcement officer, regardless of the legality of the arrest. The plain meaning of the language used in this provision limits its application to arrest scenarios. This construction comports with another rule of construction governing laws that alter the common law. Enacted in 1974, section 776.051(1) abrogates the common-law right to resist an illegal arrest with force. State v. Saunders, 339 So.2d 641, 642 n. 2 (Fla. 1976); Morley v. State, 362 So.2d 1013, 1014 (Fla. 1st DCA 1978); Lowery v. State, 356 So.2d 1325, 1325-26 (Fla. 4th DCA 1978). Statutes in derogation of the common law should be strictly construed, and should not be interpreted to displace the common law further than is necessary. See Ady v. Am. Honda Fin. Corp., 675 So.2d 577, 581 (Fla.1996); Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla.1977); Guerrier v. State, 811 So.2d 852, 854 n. 2 (Fla. 5th DCA 2002). Thus, to effectuate its plain meaning and displace the common law no more than necessary, section 776.051(1) is implicated only when a defendant acts violently against an officer in resisting an arrest.
We reject the Fifth District's use of the interpretive maxim in pari materia to engraft the prohibition into sections 784.07(2) and 843.01 when an actual arrest is not involved.[4] As the Fifth District recognized in reasoning that a patdown and detention are less intrusive than an arrest, policy reasons may support extending the prohibition in section 776.051(1) beyond police-citizen encounters involving *1270 an arrest. Tillman, 807 So.2d at 109. However, "it is not this Court's function to substitute its judgment for that of the Legislature as to the wisdom or policy of a particular statute." State v. Rife, 789 So.2d 288, 292 (Fla.2001); see also State v. Jett, 626 So.2d 691, 693 (Fla.1993) ("It is a settled rule of statutory construction that unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language."). Further, given the heightened potential for violent resistance by one being placed under arrest, we cannot say that a literal interpretation of the statute "would produce an `unreasonable or ridiculous conclusion.'" Perkins v. State, 682 So.2d 1083, 1085 (Fla.1996) (quoting Holly v. Auld, 450 So.2d 217 (Fla.1984)).
In addition, contrary to the Fifth District's determination, section 776.051(1) requires an actual arrest and not merely probable cause for an arrest. See Tillman, 807 So.2d at 110 (concluding that "once Tillman placed [the officer] in a headlock," the officer had probable cause to arrest him, rendering Tillman's subsequent actions sufficient to convict for battery on a law enforcement officer). Section 776.051(1) does not address the use of force to resist an officer when there are grounds for an arrest but no actual arrest is taking place. The notice provided by this provision does not inform persons that it applies once they could be arrested. See generally State v. Beasley, 580 So.2d 139, 142 (Fla.1991) (recognizing that publication in the Laws of Florida or the Florida Statutes gives all citizens constructive notice of the consequences of their actions).
Accordingly, we agree with the First District in Taylor and hold that section 776.051(1) is limited by its plain terms to situations involving an actual arrest.[5]

III. Defining Lawful Execution of a Legal Duty
Because the prohibition in section 776.051(1) applies only to the use of force to resist arrest, the provision has no application to prosecutions for crimes against law enforcement officers under other circumstances. The Legislature has not expressly precluded the defense of justifiable use of force against an officer in situations other than arrest. For this reason, and because the Legislature has placed the element of lawful execution of a legal duty in both sections 784.07(2) and 843.01, proof that the officer was acting lawfully is necessary in a prosecution for crimes committed under either statute that occur outside an arrest scenario.
In Taylor, the First District reviewed the sufficiency of the evidence on the lawful execution element by applying Fourth Amendment law governing warrantless entry by police into a home. 740 So.2d at 90. This approach is consistent with precedent reviewing convictions of resisting arrest without violence under section 843.02, which has a "lawful execution" element identical to that in section 843.01. See N.H., 890 So.2d at 516 (determining the officers were in lawful execution of duties *1271 in making investigative stop based on "reasonable suspicion that criminal activity was afoot"); Espiet v. State, 797 So.2d 598, 602 (Fla. 5th DCA 2001) (concluding that officer was not engaged in the lawful execution of duties when he entered defendant's house to make misdemeanor arrest); M.J.R. v. State, 715 So.2d 1103, 1104 (Fla. 5th DCA 1998) (concluding that because no exigent circumstances existed and defendant could have been arrested only for misdemeanors, officers had no authority to demand entry into residence); K.A.C. v. State, 707 So.2d 1175, 1176-77 (Fla. 3d DCA 1998) (concluding that officers had "well-founded suspicion" to detain juvenile for truancy).
Gauging the "lawful execution" element by the law governing the duty undertaken is also consistent with precedent holding that the element should not be defined in a manner that takes the issue from the jury. In State v. Anderson, 639 So.2d 609, 610-11 (Fla.1994), this Court approved a jury instruction stating that "effecting a lawful arrest constitutes lawful execution of a legal duty." In other cases, district courts have reversed convictions because of erroneous jury instructions that referred to the specific defendant in a manner that removed from the jury the issue of the lawfulness of the officer's actions. See, e.g., Smith v. State, 907 So.2d 582, 585 (Fla. 5th DCA 2005) (error to instruct jury that "detaining the defendant constitutes lawful execution of a legal duty"); Royster v. State, 643 So.2d 61, 65 (Fla. 1st DCA 1994) (error to instruct jury that "arresting and taking custody of the defendant does constitute the lawful execution of a legal duty or the execution of a legal process"); Starks v. State, 627 So.2d 1194, 1196 (Fla. 3d DCA 1993) (instruction that "the attempt to stop Mr. Starks constitutes a lawful execution of a legal duty" incorrect).
We decline to adopt less precise standards that would inevitably bring subjectivity and hence greater uncertainty into the process for determining when an officer is acting in the lawful performance of legal duties. This is consistent with the United States Supreme Court's refusal to adopt a subjective "reasonable officer" test in determining the constitutional validity of traffic stops. See Whren v. United States, 517 U.S. 806, 808, 819, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (adhering to probable cause test for traffic stops and rejecting test of whether a police officer, acting reasonably, would have made the stop for the reason given); see also Holland v. State, 696 So.2d 757, 759 (Fla.1997) (applying Whren under article I, section 12, Florida Constitution). We similarly decline to adopt a more amorphous, hence more subjective, "reasonable officer" test for determining whether an officer is acting in the lawful execution of legal duties as required to establish the crimes defined in sections 784.07(2) and 843.01. Cf. Whren, 517 U.S. at 814, 116 S.Ct. 1769 (characterizing "reasonable officer" test as an attempt "to reach subjective intent through ostensibly objective means"). Therefore, in construing the lawful execution element of sections 784.07(2) and 843.01, courts must apply the legal standards governing the duty undertaken by the law enforcement officer at the point that an assault, battery, or act of violent resistance occurs. These standards effectuate the Legislature's intent in making lawful execution of a legal duty an element of these crimes.

THIS CASE
Tillman asserts that the officer was not lawfully executing a legal duty when he entered the pool enclosure, frisked Tillman for weapons, and prevented Tillman from leaving the officer's presence. *1272 Legal standards applicable to the element of lawful execution govern each of these actions.
Absent consent, a search warrant, or an arrest warrant, a police officer may enter a private home only when there are exigent circumstances for the entry. Taylor, 740 So.2d at 90 (citing Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).[6]See also Brigham City v. Stuart, ___ U.S. ___, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006) (discussing exigency exception). The zone of protection under the Fourth Amendment extends to the curtilage of a home, which includes a fenced or enclosed area encompassing the dwelling. See State v. Rickard, 420 So.2d 303, 306 (Fla.1982) (noting that courts will not allow a warrantless search or seizure in a constitutionally protected area such as one's back yard).
In Payton, the United States Supreme Court stated that "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." 445 U.S. at 590, 100 S.Ct. 1371. This Court recently noted:
The circumstances in which the Supreme Court has applied the exigent circumstances exception are "few in number and carefully delineated." They include pursuing a fleeing felon, preventing the destruction of evidence, searching incident to a lawful arrest, and fighting fires. Outside of those established categories, the Supreme Court "has often heard, and steadfastly rejected, the invitation to carve out further exceptions to the warrant requirement for searches of the home."
Riggs v. State, 918 So.2d 274, 279 (Fla. 2005) (citations omitted) (quoting United States v. U.S. Dist. Court, 407 U.S. 297, 318, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), and Illinois v. Rodriguez, 497 U.S. 177, 192, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)).
Contrary to the Fifth District's determination, Tillman's status as a guest does not preclude application of the law governing warrantless entry into a home in determining whether the officer was lawfully executing a legal duty. The "lawful execution" element does not carry with it the standing requirements that have developed in Fourth Amendment precedent. Even if Tillman's status as a guest would deprive him of standing to seek suppression of evidence that might have been seized from the home,[7] that status is irrelevant to the determination whether the State established that the officer was in the lawful execution of his duties when the struggle with Tillman occurred.
Assuming arguendo that the officer was in the lawful execution of a legal duty when he entered the pool enclosure, *1273 a court determining the lawfulness of the officer's actions would next determine whether there was reasonable suspicion to detain Tillman and frisk him for weapons. Section 901.151(2), Florida Statutes (2005), which governs detentions, provides:
Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.
This standard is consonant with the holding in Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." For reasonable suspicion justifying a detention to exist, "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). An officer making an investigatory stop "must be able to articulate something more than an `inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting Terry, 392 U.S. at 27, 88 S.Ct. 1868). Terry further provides that an officer may frisk a detained person for weapons if the police officer has a reasonable suspicion that the person is armed and poses a threat to the officer or others. 392 U.S. at 27, 88 S.Ct. 1868; see also J.L. v. State, 727 So.2d 204, 206 (Fla.1998) ("The circumstances may... require a frisk of the person to determine whether the person is carrying a weapon, if the police officer has a reasonable suspicion that the person is armed and poses a threat to the officer or others."), aff'd, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).
In this case, the officer twice exerted control over Tillman indicative of a Fourth Amendment seizure: first when the officer performed a weapons search against Tillman's wishes[8] and again when the officer prevented Tillman from leaving his presence. The detention of Tillman constituted lawful execution of a legal duty only if the facts known to the officer created a reasonable suspicion either that Tillman was involved in criminal activity or that he was armed and dangerous.
The Fifth District, which concluded that "the technical illegality" of an officer's actions does not defeat a prosecution for battery on an officer and resisting with violence, did not apply the standards we adopt today when it assessed the sufficiency of the evidence to support Tillman's convictions. See Tillman, 807 So.2d at 108-09. Our holding that section 776.051(1) applies only in an arrest scenario requires that the State establish the element of lawful execution of a legal duty under the facts of this case.

*1274 CONCLUSION
Without question, the statutory enhancement of the assault and battery offenses against law enforcement officers in section 784.07, and the "resisting" offenses contained in sections 843.01 and 843.02, Florida Statutes, reflect a strong public interest in the protection of law enforcement officers. However, in making "lawful performance" and "lawful execution" of duties an element of both sections 784.07 and 843.01, the Legislature has specified that this enhanced punishment applies only when officers operate within the limits of the law contained in constitutional and statutory provisions as well as pertinent precedent. In this case, those limits are found in Fourth Amendment precedent such as Payton and Terry as well as section 901.151(2), Florida Statutes.
For the reasons explained herein, we approve the holding in Taylor that the prohibition on the use of force to resist an arrest in section 776.051(1) does not extend beyond arrest scenarios. We quash the Fifth District's decision to the contrary in this case and remand for reconsideration of the denial of Tillman's motion for judgment of acquittal in accord with the standards set out in this opinion.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, and CANTERO, JJ., concur.
BELL, J., specially concurs with an opinion, in which WELLS and CANTERO, JJ., concur.
BELL, J., specially concurring.
I join the majority because I cannot say that it is unreasonable to interpret the "lawful execution of a legal duty" element in sections 784.07(2) and 843.01 according to its plain meaning, especially in the absence of any contrary legislative intent expressly stated in sections 784.07(2) and 843.01, Florida Statutes (2005). However, I write separately to note my concern that this interpretation may narrow the intended scope of protection for public officials further than actually intended and, thereby, undermine the very purpose of these statutes.
It is clear that the purpose behind sections 784.07(2) and 843.01 is to protect public officials by imposing heightened penalties on civilians who physically retaliate against them as they carry out their public duties. Cf. State v. Iacovone, 660 So.2d 1371, 1373 (Fla.1995) (finding that the goal of granting "law enforcement officers the greatest possible protection ... undoubtedly played a role in the enacting of section[ ] 784.07(3)"). Other state courts have recognized that similar statutes in their respective states serve this purpose. See, e.g., State v. Kerrigan, 123 Idaho 508, 849 P.2d 969, 972 (Ct.App.1993) (finding that section 18-915, Idaho Code, "is designed to protect those who are charged with preserving the public welfare from those who impair it"). And we have recognized that it is appropriate for the Legislature to provide this protection. See Soverino v. State, 356 So.2d 269, 271-72 (Fla.1978) (upholding section 784.07, Florida Statutes (Supp.1976), against an equal-protection challenge, in part because the Legislature's decision to grant greater protection to public officials performing indispensable public services "fosters the public safety and welfare").
While the effect of our interpretation of this element is uncertain, I am concerned that this decision may be applied in a manner that requires the State to prove that every aspect of a law enforcement *1275 officer's conduct fully complied with Fourth Amendment jurisprudence, which seems far too strict. Such an interpretation might render law enforcement officers more vulnerable to retaliation than the Legislature intended.
A review of other states' laws indicates that similar statutes exist in nearly every other state,[9] but only a few of these statutes use the narrow phrase "lawful performance."[10] Most of these statutes use a broader phrase to define the scope of the enhanced protection for law enforcement officers. They require that the official be "engaged in the execution of any official duties," acting "within the scope of his authority," acting "in an official capacity," or acting "in the performance of his duties." See, e.g., Ariz.Rev.Stat. Ann. § 13-1204(A)(5) (2006) ("A person commits aggravated assault ... [i]f the person commits the assault knowing or having reason to know that the victim is a peace officer... while engaged in the execution of any official duties."); Ind.Code § 35-42-2-1(a)(1)(2006) (enhancing penalty if the offense "is committed against a law enforcement officer ... while the officer is engaged in the execution of his official duty"); Utah Code Ann. § 76-5-102.4(1) (2005) (imposing a Class A misdemeanor against a person who "assaults a peace officer with knowledge that he is a peace officer, and when the peace officer is acting *1276 within the scope of his authority as a peace officer"); Wis. Stat. § 940.20(2) (2005) (making it a Class H felony to "intentionally cause[ ] bodily harm to a law enforcement officer ... acting in an official capacity and the person knows or has reason to know that the victim is a law enforcement officer"); 18 Pa. Cons.Stat. § 2702(a)(3) (2005) ("A person is guilty of aggravated assault if he ... attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents or other persons enumerated in subsection (c), in the performance of duty.").
Many of these states do not require a showing that the officer's action was technically lawful in order to submit the case to the jury. See State v. Yoshida, 195 Ariz. 183, 986 P.2d 216, 218 (Ct.App.1998) ("[W]e have no difficulty in concluding that the term `official duties,' as it appears in [Arizona Revised Statutes Annotated] section 13-1204, encompasses all aspects of a peace officer's good faith performance of his or her job-related duties, even if the officer's actions are later found to be constitutionally unreasonable."); Robinson v. State, 814 N.E.2d 704, 708-09 (Ind.Ct.App. 2004) (finding officers' entry into the defendant's home did not comply with the Fourth Amendment jurisprudence but, nonetheless, finding the evidence supported the jury's verdict that defendant was guilty of battery of a law enforcement officer, a crime requiring the State show the officers were "engaged in the execution of [their] official duty"); State v. Gardiner, 814 P.2d 568, 574 (Utah 1991) (finding the requirement in section 76-5-102.4, Utah Code Annotated, that the officer be "acting within the scope of his authority as a peace officer," did "not require the State prove that the precise act the officer is performing is not legally challengeable," but rather that the officer was "acting within the `scope of authority of a peace officer.'"); Commonwealth v. Biagini, 540 Pa. 22, 655 A.2d 492, 498-99 (1995) (affirming a conviction for aggravated assault, in part because the illegality of the arrest did not prevent the State from establishing that the officers were acting "in the performance of duty," as required by the statute defining aggravated assault); Commonwealth v. Moyer, 65 Pa. D & C.4th 463, 474-76 (Pa.Com.Pl.2004) (applying Biagini, 655 A.2d 492, when the defendant forcefully resisted a warrantless entry).
This Court's interpretation of the statutory language is a fair one. But, given the above, whether the plain meaning of the term "lawful performance" conforms to legislative intent or narrows the scope of protection too far is an important question the Legislature should examine in light of this decision.
WELLS and CANTERO, JJ., concur.
NOTES
[1] Although the 1997 versions of these statutes apply to this case, the provisions have not materially changed in the interim. We therefore cite to the current versions of these statutes.
[2] Section 784.07(2) requires that the officer be "engaged in the lawful performance of his or her duties." Section 843.01 requires that the officer be "in the lawful execution of any legal duty." These elements are functionally identical. For convenience, we refer to them in the singular as "lawful execution."
[3] In reviewing Tillman's appeal of the trial court's denial of his motions for judgment of acquittal, the district court, as required, construed the facts in the light most favorable to the State. Id. at 107, 807 So.2d 106. In his defense, Tillman had testified that he did not threaten the officer, hear anyone else do so, or give permission for the patdown. He also claimed that he was cooperating with the officers until Henriquez pushed him, causing Tillman to stumble, lose his balance, and fall to the ground on top of Henriquez. Id. at 108, 807 So.2d 106.
[4] In arrest situations, Florida courts have consistently read section 776.051(1) in pari materia with the offenses described in sections 784.07(2) and 843.01 and, in so doing, have not required the State to prove that the arrest was lawful. See, e.g., Espinosa, 686 So.2d at 1347 and n. 4 (declining to revisit "well-settled" law in applying section 776.051 to crime of resisting an officer with violence); see also Delaney v. State, 489 So.2d 891, 892-93 (Fla. 1st DCA 1986); State v. Johnson, 382 So.2d 866, 867 (Fla. 2d DCA 1980). Because the issue is not before us, we decline to address the effect of section 776.051 on the "lawful execution" element in arrest situations.
[5] The First District stated in dicta that "[t]he comparison between a detention and an arrest may be similar enough in this context," suggesting that it would extend the prohibition in section 776.051(1) to the use of force to resist illegal detentions. Taylor, 740 So.2d at 91. This determination is for the Legislature.
[6] Although not presented as an issue for our review, the trial court denied a defense request for a jury instruction based on Payton on the element of lawful execution of a legal duty.
[7] See State v. Washington, 884 So.2d 97, 100 (Fla. 2d DCA 2004) (holding that party guest lacked standing to contest warrantless search of home); but see 6 Wayne R. LaFave, Search and Seizure § 11.3(b), at 156 (4th ed.2004) (suggesting that "if the police, without required notice or without probable cause or without a required search warrant, burst into B's home and disrupt a dinner party at which A is present as a guest, then certainly A should be deemed to have standing to objectjust as passengers in a car may object to its illegal stopping").
[8] The nonconsensual weapons search demonstrates that Tillman was detained for Fourth Amendment purposes. Cf. Smith v. State, 592 So.2d 1206, 1208 (Fla. 2d DCA 1992) ("The lawfulness of a pat down search for weapons presupposes that a stop is valid and that the officer then forms the necessary suspicion that a suspect is armed and dangerous.").
[9] It appears that most states have statutes heightening the penalty for persons who commit an assault or battery on a government official. These statutes take many forms. Many of them impose a separate offense if the assault or battery is committed against certain government officials. See, e.g., Conn. Gen.Stat. § 53a-167c (2005 & Supp.2006); Haw.Rev.Stat. § 707-712.5 (1993 & Supp. 2005); Kan. Stat. Ann. § 21-3411 (1995 & Supp.2005); La.Rev.Stat. Ann. § 14:37.2 (1997 & Supp.2006); Me.Rev.Stat. Ann. tit. 17-A, § 752-A (2006); Mo.Rev.Stat. § 565.081 (Supp.2005); Mont.Code Ann. § 45-5-210 (2005); Neb.Rev.Stat. § 28-929 (Supp.2005); Or.Rev.Stat. § 163.208 (2005); Wyo. Stat. Ann. 6-5-204 (2005). Others make it a factor in determining either the class of felony, the degree of assault or battery, or whether the defendant can be charged with aggravated assault. See, e.g., Ariz.Rev. Stat. Ann. § 13-1204 (2001 & Supp.2005); Ark.Code Ann. § 5-13-202 (West 2006); Minn.Stat. § 609.2231 (2006); Miss.Code Ann. § 97-3-7 (2000 & Supp.2005); N.C. Gen.Stat. §§ 14-34.2 (2005); Tex. Penal Code Ann. § 22.02 (Vernon 2003 & Supp.2005); Del.Code Ann. tit. 11, § 612 (2001 & Supp. 2004); 720 Ill. Comp. Stat. 5/12-2 (1993 & Supp.2006); Ind.Code § 35-42-2-1 (2004 & Supp.2006); Iowa Code § 708.3A (Supp. 2005); Ky.Rev.Stat. Ann. § 508.025 (1999 & Supp.2005); Minn.Stat. § 609.2231 (2006); Nev.Rev.Stat. § 200.471 (2000 & Supp.2005); N.J. Stat. Ann. § 2C:12-1 (2005 & Supp. 2006); Ohio Rev.Code Ann. § 2903.13 (West 1997 & Supp.2006); 18 Pa. Cons.Stat. § 2702 (2000 & Supp.2006); S.D. Codified Laws § 22-18-1.05 (2005); Utah Code Ann. § 76-5-102.4 (Supp.2005); Va.Code Ann. § 18.2-57 (West 2001 & Supp.2005); Wis. Stat. § 940.20 (2003-04 & Supp.2005). Finally other states make this factor determinative in the penalty that must be imposed. See, e.g., Alaska Stat. § 12.55.135 (2004); Cal.Penal Code § 241 (1999 & Supp.2006); Ga.Code Ann. § 16-5-21 (2003 & Supp.2005); Idaho Code Ann. § 18-915 (2005); Mass. Gen. Laws. ch. 265 § 13D (2000); Md.Code Ann., Crim. Law § 3-203 (2002 & Supp.2006); N.D. Cent.Code § 12.1-17-01 (1997 & Supp. 2005); N.H.Rev.Stat. Ann. § 651:6 (1996 & Supp.2005); Okla. Stat. tit. 21 § 649 (2002 & Supp.2005-2006); R.I. Gen. Laws § 11-5-5 (2002 & Supp.2005); Vt. Stat. Ann. tit. 13, § 1028 (1998 & Supp.2005); Wash. Rev.Code § 9A.36.031 (2004 & Supp.2005); W. Va. Code § 61-2-10b (2002).
[10] One of the states that uses this phrase has arguably defined it as we have now defined the phrase in sections 784.07(2) and 843.01, Florida Statutes. See Mickelson v. State, 886 P.2d 247, 249-51 (Wyo.1994) (finding that police officers were not "`engaged in the lawful performance' of their official duties" because neither search and seizure laws nor the state's liquor laws supported the warrantless entry into the defendant's bar).