944 So.2d 403 (2006)
The STATE of Florida, Appellant,
v.
Donald T. ROY, Sr., Appellee.
No. 3D04-2573.
District Court of Appeal of Florida, Third District.
October 18, 2006.
Rehearing and Rehearing Denied January 11, 2007.
Charles J. Crist, Jr., Attorney General; and William J. Selinger, Assistant Attorney General, for appellant.
*404 Harry M. Solomon, Miami, for appellee.
Before COPE, C.J., SHEPHERD and ROTHENBERG, JJ.
Rehearing and Rehearing En Banc Denied January 11, 2007.
COPE, C.J.
The State of Florida appeals the dismissal of the information filed against Donald T. Roy, Sr. ("Roy") pursuant to a sworn motion to dismiss. We remand for further proceedings.
The criminal charges in this case arose out of a confrontation which occurred when two police officers entered the fenced and posted back yard of defendant/appellee Roy at 1:15 a.m. The officers had been dispatched to investigate a disturbance call complaining of loud talking, and entered defendant's property illegally. An altercation ensued between defendant and the officers, resulting in the defendant being charged by information with two counts of battery (counts 1 and 2), one count of battery on a law enforcement officer (count 3), and one count of resisting an officer with violence (count 4).
The defendant filed a sworn motion to dismiss the charges. The defendant asserted that the officers' entry into his fenced back yard without a warrant was illegal. According to the defendant, the fact that the entry was illegal meant that the officers were not engaged in the lawful execution or performance of a legal duty. The defendant contended that this meant the state could not establish an essential element of the two felony charges. The defendant maintained that the illegal entry also tainted the misdemeanor counts.
The defendant's sworn motion to dismiss stated the facts as follows:
Factual Background
2. This incident began on January 7, 2004 at about 1:15 a.m. when Officer Antoine, backed up by Officer Condy, was dispatched on a disturbance call of loud talking at an address located at 12002 NE 8th Avenue, Biscayne Park, Florida.
3. When Antoine and Condy arrived at that address, the lights were out and nothing was going on. Antoine and Condy heard voices coming from a home one or two houses away and decided to investigate.
4. Antoine and Condy walked south on 8th Avenue and ultimately heard the voices coming from the backyard of Roy's house, located at 11942 NE 8th Avenue, Biscayne Park. They went to the front door where Officer Antoine, choosing to ignore the lighted doorbell, knocked with his flashlight. After receiving no response, Antoine and Condy proceeded to walk to the left side of the home, since they had determined that the noise was coming from the back yard.
5. In order to enter the back yard of the home, it is necessary to open a gate which is part of a fence that shields the back yard from public view. This gate contains three or four signs warning against trespassing. Antoine and Condy ignored the warnings, opened the gate and walked into the back yard.
6. According to Antoine, he ignored the "no trespassing" signs because "as a police officer in the scope of my duties, that sign doesn't apply to me." Antoine testified that he had a right to enter the property notwithstanding the signs to investigate the allegations of "disturbance, loud talking".
7. Once inside the back yard, upon inquiry by Roy as to the reason for their presence on his property, the police informed him and his friend, Rodney Simpson, who had been sitting on the back porch, that they were police officers responding to a disturbance call. *405 Roy responded: "Well, I'm in my yard. Get the fuck out of my yard."
8. According to Antoine, he replied to Roy's statement with the following: "We're here on a disturbance call and we are conducting an investigation and there's a complaint that there's loud talking in this area and this is the only house that there is loud talking coming from." Antoine testified that Condy also told Roy: "We're here for a reason, and we have every right to be here . . . "
9. In response to Roy's continuous requests to the officers that they leave his property, Antoine continued to confront him because "there was a problem at hand and as a police officer I have my job, my duties . . ." According to Antoine, he remained and explained to Roy "approximately 8 times that the loud talking coming from his yard was bothering his neighbors."
10. Antoine then told Roy: "[Y]ou're being disorderly . . . you're making this a serious issue . . . you can be arrested for it."
11. According to Antoine, in response Roy again told Antoine to "get the fuck out" and then "slapped [Antoine's] left hand with the back of his right hand with force."
12. As Antoine reached for his handcuffs to begin the arrest process: "[Roy] walked up and bumped me with his chest."
13. According to Officers Antoine and Condy, it took both of them to arrest Roy by getting him on the ground and handcuff him behind his back, during which time Roy continued to resist violently and forcefully.
14. Finally, as Antoine was putting Roy in the back seat of his patrol car: "[Roy] turned around and faced me and threw up his knee and his knee hit me . . . on my right upper thigh" . . . "he did it twice".
The sworn motion included as exhibits the arrest affidavit, the offense report, and the deposition of Officer Antoine. These make clear that the first two times the defendant struck the officer (once on the hand and once on the chest), see ¶¶ 11-12, the officer had not yet attempted to arrest the defendant. After the bump on the chest, the defendant resisted while being handcuffed, see ¶ 13, and struck the officer with his knee while being placed in the patrol car. Id. ¶ 14.
The trial court ruled that the officers' entry into defendant's property was illegal and that all of the officers' actions were outside the scope of their authority. The court concluded that the officers were not engaged in the lawful performance of their duty, which was fatal to the felony charges, and that the illegal entry also tainted the misdemeanor counts. The court dismissed all charges. The State has appealed.
The trial court's determination that the officers' entry was illegal is supported by applicable law. The defendant's backyard was clothed with a reasonable expectation of privacy from unreasonable governmental intrusion. See State v. Morsman, 394 So.2d 408, 409 (Fla.1981); Potts v. Johnson, 654 So.2d 596, 599 (Fla. 3d DCA 1995); State v. Parker, 399 So.2d 24, 28 (Fla. 3d DCA 1981).
While this case was pending on appeal, the Florida Supreme Court announced Tillman v. State, 934 So.2d 1263 (Fla. 2006), which clarifies the law applicable here. The trial court did not have the benefit of Tillman at the time of the hearing below.
Under the Tillman case, proper analysis of the felony counts depends on whether the defendant's use of force occurred (a) *406 before he was placed under arrest, or (b) during or after the arrest. We must therefore begin by examining which acts correspond to the separate counts of the information.[1]
As we interpret the information and sworn motion, the simple battery counts apply to the defendant's striking of the officer in the hand, and bumping him in the chest (counts 1 and 2). After this, the officer informed the defendant that he was under arrest.
As set forth in the sworn motion, the charge of resisting an officer (count 4) is based on the defendant's violent resistance to being handcuffed. Sworn motion ¶ 13. The charge of battery on a law enforcement officer (count 3) is based on the defendant's striking the officer with his knee while the officer was placing the defendant in the patrol car.
We first consider the felony counts, battery on a law enforcement officer (count 3) and resisting an officer with violence (count 4). Under both statutes, an element of the crime is that the officer must have been engaged in the lawful performance or execution of a legal duty at the time of the incident.[2]See Tillman, 934 So.2d at 1268.
The defendant argues that because the officers' entry was illegal, the officers were not engaged in the lawful execution of their duties. The trial court agreed and granted the sworn motion to dismiss counts 3 and 4.
We must respectfully disagree with the trial court insofar as the felony counts relate to the defendant's blows, or resistance with violence, occurring during and after the arrest. Florida has a special statutory provision which states:
776.51 Use of force in resisting or making an arrest; prohibition.
(1) A person is not justified in the use of force to resist an arrest by a law enforcement officer who is known, or reasonably appears, to be a law enforcement officer.
§ 776.051(1), Fla. Stat. (2003).
This statute has been construed to prohibit the use of violence in resisting an arrest, even if the arrest is illegal. "[C]ourts have consistently read section 776.051(1), Florida Statutes (1995), in pari materia with section 843.01 to eliminate [the requirement] that [the arrest be legal] as to the offense of resisting arrest with violence." State v. Espinosa, 686 So.2d 1345, 1347 (Fla.1996) (footnote and citations omitted); see Tillman, 934 So.2d at 1269 n. 4. As we read the information, count 4 covers the defendant's resistance with violence while the defendant was being handcuffed after being informed he was under arrest. Count 3, charging battery on a law enforcement officer, covers the defendant's striking of the officer with his knee while being placed in the patrol car. Since both acts occurred after the *407 officer told the defendant he was under arrest, section 776.051 applies and prohibits the defendant from using violence to resist the arrest, even if the arrest was illegal. We therefore reverse the dismissal order on counts 3 and 4 to the extent that counts 3 and 4 allege violent conduct by the defendant after the officer informed him that he was under arrest.
We also conclude that we must reverse the dismissal of counts 1 and 2, simple battery. The elements of simple battery are:
784.03 Battery; felony battery.
(1)(a) The offense of battery occurs when a person:
1. Actually and intentionally touches or strikes another person against the will of the other; or
2. Intentionally causes bodily harm to another person.
§ 784.03(1)(a), Fla. Stat. (2003).
For the charge of simple battery, it is not necessary for the State to establish that the officers were engaged in the lawful performance or execution of their duties. That being so, counts 1 and 2 should not have been dismissed. We reverse the dismissal order as to those counts.
For the stated reasons the dismissal order is reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] The sworn motion to dismiss and demurrer did not make clear which acts correspond to the four counts of the Information. The sworn motion to dismiss used the arrest affidavit, offense report, and officer's deposition as the factual basis for the motion.
[2] The offense of battery on a law enforcement officer occurs when a person knowingly commits "an assault or battery upon a law enforcement officer, . . . while the officer . . . is engaged in the lawful performance of his or her duties. . . ." 784.07(2), Fla. Stat. (2003) (emphasis added).

The offense of resisting an officer with violence occurs when a person "knowingly and willfully resists, obstructs, or opposes any officer . . . in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person. . . ." § 843.01, Fla. Stat. (2003) (emphasis added).