945 So.2d 642 (2006)
J.H.M., Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-74.
District Court of Appeal of Florida, Second District.
December 29, 2006.
*643 James Marion Moorman, Public Defender, and Julius J. Aulisio, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Deborah Fraim Hogge, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
J.H.M. appeals an order adjudicating her delinquent for battery on a law enforcement officer in violation of section 784.07, Florida Statutes (2004). We reverse the adjudication and the resulting disposition.
Three Hillsborough County deputies were looking for an adult male suspect. The nature of this investigation is not well developed in our record. The deputies claim that they were investigating a "battery."[1] One of them had apparently seen this suspect at a specific apartment in Tampa, Florida, about a week earlier. In hopes the suspect might still be at the apartment, on October 27, 2004, the deputies went to the apartment, apparently to arrest him.
It is unclear why these deputies thought they could arrest the suspect. They did not have a warrant for his arrest, nor did they witness the offense, which seems to have been a misdemeanor. See § 901.15, Fla. Stat. (2004) (providing that a misdemeanor generally must occur in the presence of an officer to give the officer authority to perform an arrest without a warrant). They also did not have a search warrant for the apartment.
At approximately 8 p.m., the deputies knocked on the door of the apartment. They were armed and in uniform but did not have their weapons displayed. J.H.M., a fourteen-year-old girl who is the cousin of the apartment's tenant, answered the door. She was babysitting smaller children at the apartment but was otherwise alone. The deputies informed her they were conducting an investigation. J.H.M. refused to identify herself when the deputies asked for her name. As J.H.M. continued to refuse to answer the deputies' questions, one of them raised his voice. J.H.M. told them the only people inside were herself and the children she was babysitting. The deputies did not see an adult male inside the apartment. They also knew that neither the children nor J.H.M. were the suspect. The commotion arising from J.H.M. and the deputies' confrontation was beginning to draw a crowd of people from the apartment complex.
J.H.M. asked the deputies if they had a warrant. Because they did not have a warrant, she told them that she did not *644 want them to come into the apartment. She attempted to shut the door. From the evidence in the record, at that point the deputies had no legal right to further pursue the interview and were required to permit J.H.M. to close the door.
Instead of ending the investigation, the deputies ordered J.H.M. to come out of the apartment. Even though she was not suspected of any offense, the deputies believed that they were still conducting a criminal investigation and that she was not free to shut the door. J.H.M., who apparently was barefoot, attempted to shut the door and to go inside the apartment to find her shoes. One of the deputies put his foot in the door to block J.H.M. from shutting it completely. The deputy stepped in and looked around the door, entering the apartment at least to the extent required to determine that there were no weapons behind the door.
At approximately this point, J.H.M.'s mother arrived. She told her daughter not to comply with the deputies or tell them anything. One of the deputies took the mother aside while the deputy at the doorway was trying to get J.H.M. to step outside. J.H.M. retrieved her shoes. As she was leaving the apartment, J.H.M. pushed the deputy at the door in the chest with two hands and said, "Don't touch my momma and you'll see what happens." When J.H.M. pushed him, the deputy placed her against the wall and attempted to take her into custody. J.H.M. struggled while he was trying to handcuff her. During the incident, the deputy hurt his thumb. For these events, J.H.M. was arrested and charged as a juvenile for battery on a law enforcement officer and obstructing or opposing an officer with violence.[2]
At the conclusion of the evidence, the trial judge expressed his concern that the officers had no warrant or other basis to arrest the man under investigation. The trial judge concluded that it would have been unlawful for the officers to arrest the man if he had been present. Although he concluded that the deputies had no basis to arrest or detain J.H.M., he doubted that she had a right to physically protest these events. His doubts were supported by the case law from this court. See State v. Freeney, 613 So.2d 523 (Fla. 2d DCA 1993). The trial court ultimately found that the State had failed to prove the offense of opposing an officer with violence but that it had proven the offense of battery on a law enforcement officer.
In Tillman v. State, 934 So.2d 1263 (Fla. 2006), which had not been decided when the trial court made its ruling in this case, the supreme court resolved a conflict between the districts regarding whether the prohibition against the use of force to resist an illegal arrest extended to other police-citizen encounters that resulted in charges of battery on a law enforcement officer against the protesting citizens. Tillman held the prohibition against a use of force applied only to arrest situations.
In non-arrest cases, in order to convict a defendant under sections 784.07 and 843.01, Florida Statutes (2005), which define the crimes of battery on a law enforcement officer and resisting an officer with violence, the State must prove that the officer was "engaged in the lawful performance of his or her duties" or "in the lawful execution of any legal duty." *645 Id. at 1266 (footnote omitted). The supreme court approved the First District's holding in Taylor v. State, 740 So.2d 89 (Fla. 1st DCA 1999).
In both Tillman and Taylor, the officers were improperly inside a home. In this case, the deputies were not inside the apartment at the time of the incident and had made, at most, a brief intrusion into the apartment a short while earlier. We cannot conclude, however, that the fact these events occurred at or immediately outside the threshold of the apartment placed the deputies in a position of acting in the lawful execution of a legal duty at the time J.H.M. pushed the deputy. The trial court correctly determined that the officers had no lawful basis to detain J.H.M. when they ordered her out of the apartment. Once the officers refused to allow her to close the door, they were no longer in the lawful execution of a legal duty for purposes of the holding in Tillman. Thus, we reverse the adjudication and disposition in this case and remand for further proceedings.
The proceedings on remand would appear to present a very difficult legal issue. Although the conduct of the deputies in this case may explain, if not legally justify, J.H.M.'s decision to shove the deputy at the door, the facts of this case demonstrate a potential difficulty in applying the holding in Tillman. The difficulty arises because the distinction in Tillman between arrest and non-arrest cases may not be easily drawn in many common, real world situations.
In this case, it is clear that J.H.M. was involved in a "non-arrest case" until she pushed the deputy. That push, however, arguably gave the deputies the authority to arrest her for committing a simple battery in their presence. If the push transformed this case into an "arrest case," then J.H.M. may have committed battery on a law enforcement officer after that point when she struggled with the deputy and hurt his thumb. See State v. Roy, 944 So.2d 403, 406-07 (Fla. 3d DCA 2006) (reversing an order dismissing an information that included one count of battery on a law enforcement officer and finding that under the Tillman test, once an officer effectuates an actual arrest, use of force is still prohibited to resist it, even if the arrest is illegal). Because very few people immediately cease resistance when an officer attempts such an arrest, this analysis would give very limited application to Tillman. It would also allow a police officer to transform an unlawful detainment into a legal arrest by his or her own confrontational behavior.
We are inclined to believe that the supreme court in Tillman may have intended to use the more formal and technical definition of "arrest" that is used for purposes such as speedy trial. As Justice Bell explained in his concurring opinion in Bulgin v. State, 912 So.2d 307 (Fla.2005):
It is uniformly held that an arrest, in the technical and restricted sense of the criminal law, is "the apprehension or taking into custody of an alleged offender, in order that he may be brought into the proper court to answer for a crime." Cornelius, Search and Seizures, 2nd ed., Sec. 47. When used in this sense, an arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting *646 officer then and there to arrest and detain him.
Id. at 313-14 (Bell, J., concurring); see also Melton v. State, 75 So.2d 291, 294 (Fla.1954).
If such an "arrest" is necessary to transform a "non-arrest case" into an "arrest case" under the holding in Tillman, then it is unlikely that J.H.M.'s case ever became an "arrest case" because there is no evidence in the current record that any officer ever communicated "an intention or purpose then and there to effect an arrest."
The analysis in this case is made even more complicated by the fact that the trial court has already found J.H.M. not guilty of opposing an officer with violence, which would seem to relate to the conduct that occurred after J.H.M. shoved the deputy. Accordingly, we reverse the order of adjudication and the resulting disposition in this case. On remand, the trial court cannot retry the charge of opposing an officer with violence.
Reversed and remanded.
SALCINES and CANADY, JJ., Concur.
NOTES
[1] One deputy suggested that it might have been an aggravated battery, but he was not sure.
[2] The facts are described in the light most favorable to the State. J.H.M. denied that she pushed the deputy or struggled. Other witnesses at the scene supported her story. The deputy who took the mother aside did not see J.H.M. push the other deputy and did not testify about any struggle thereafter.