984 So.2d 644 (2008)
Manuel HERRERA-FERNANDEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-3743.
District Court of Appeal of Florida, Fourth District.
June 18, 2008.
Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
STONE, J.
Herrera-Fernandez appeals the judgment and sentence for trafficking in cannabis. Police seized over 10,000 pounds of cannabis from Herrera-Fernandez's garage during a warrantless search. The trial court denied his motion to suppress the physical evidence. On rehearing, we withdraw our earlier opinion and substitute the following in its place. Failing to find record support for the trial court's conclusion that Herrera-Fernandez consented to law enforcement entering his home, we reverse.
An informant had notified the Drug Enforcement Agency (DEA) agent that Herrera-Fernandez's address harbored a "grow house" of marijuana. The agent then enlisted the help of a Spanish speaking Pembroke Pines Police Department *645 detective to visit Herrera-Fernandez's home. The agent did not speak or understand Spanish. Both officials testified at the suppression hearing, recounting the events when they knocked on Herrera-Fernandez's door. First, the agent recounted how the detective was communicating with Herrera-Fernandez in Spanish:
Q. Were you able to understand anything?
A. No, not really.
Q. How were you able to follow what was happening?
A. Just from the gestures and communication with Detective[.]
Q. What was he doing that allowed you to understand what was going on?
A. When he was speaking with him, he had direct eye contact with the defendant. He appeared to understand what he was saying to him.
At one point in time he allowed us to enter the residence, which I assumed he received permission for us to come inside.

Q. So basically who entered first  you or [Detective]?
A. [Detective]. I was right next to him.
Q. So basically [Detective] is the one dealing with the defendant?
A. Yes.
The agent then described how Herrera-Fernandez was arrested:
Q. What happened next?
A. Next Detective . . . began to speak to the defendant. Moments later he told him to turn around and placed him into custody  in cuffs.
Q. This was inside the residence?
A. Inside the residence.
During cross-examination, the agent replied that he did not "recall him being asked to come outside."
Second, the detective explained how he arrested Herrera-Fernandez: "Basically, he answers the door. We say, you know, `Police department. We are here because, you know, we received information'  at that particular moment, boom, you can smell it. I decided not to proceed with any other questions and go ahead and place him into custody."
On cross-examination, the detective elaborated as follows:
When he opened the door, we were able to converse and tell him who we were. I would say within less than a minute, while we were trying to find out what is going on, I could smell a strong odor of cannabis.
Q. Rather than question him as to what the odor was, you knew what it was and you placed him in custody?
A. Correct.
Q. He is detained or held there, correct?
A. Yes.
Q. How far from the front door was he when this occurred?
A. Two feet.
Q. That was inside the foyer area of the house?
A. Correct.
Q. You don't pull him out of the house?
A. No.
Q. As soon as you have him in cuffs, then the back-up team starts hitting the house for the protective sweep?
A. Correct.
On re-direct, the detective again omitted any reference to obtaining consent to enter the house:
Q. . . . how did you and the agent actually get inside the house initially?
A. The defendant opened the door. As he opened the door, we proceeded to *646 start our conversation with him. While we were conversing, the odor was so strong. I decided to place him into custody at that time.

Denying Herrera-Fernandez's motion to suppress, the trial court's order states that "[w]ith the consent of Defendant, law enforcement entered the residence. They then conducted a protective sweep, during which time they discovered a large amount of marijuana growing in the garage. . . ."
On appeal, Herrera-Fernandez argues that the trial court erred in denying his suppression motion because the officers violated his Fourth Amendment right when, without a warrant, they arrested him inside his home and seized physical evidence found inside.
In reply, repeatedly citing to the agent's testimony, the state submits that "Appellant let Detective . . . and Agent . . . into the house." Referring to the agent's testimony, the state's brief further asserts that "[t]he State's witnesses testified that Appellant allowed them to enter the house." "Therefore, based on the trial court's findings, entrance into the house was consensual," concludes the answer brief.
"The standard of review for a motion to suppress requires us to defer to the trial courts' factual findings as long as they are supported by substantial competent evidence, but review its legal conclusions de novo." State v. Rudy, 974 So.2d 1164, 1166 (Fla. 4th DCA 2008). Generally, this court "must consider both whether the entry was permissible under these facts and whether the subsequent search of the [residence] exceeded the parameters allowed if the entry was warranted." Seibert v. State, 923 So.2d 460, 468 (Fla.2006).
In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court emphasized that "`the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'" Tillman v. State, 934 So.2d 1263, 1272 (Fla.2006) (quoting Payton, 445 U.S. at 590, 100 S.Ct. 1371); see also Taylor v. State, 740 So.2d 89, 90 (Fla. 1st DCA 1999) ("[T]here was no exigent circumstance that would justify a warrantless entry into the residence, even if probable cause had existed for an arrest."). "If a law enforcement officer does not have consent, a search warrant, or an arrest warrant, he may not enter a private home or its curtilage except when it is justified by exigent circumstances." Rodriguez v. State, 964 So.2d 833, 837 (Fla. 2d DCA 2007) (discussing "the law governing a police officer's entry into a citizen's residence or onto its curtilage to effect an arrest"). In other words, "[t]he police must have an arrest warrant to effect a non-emergency arrest of an individual in his own home. Such an arrest is an unreasonable seizure absent exigent circumstances." Norton v. State, 691 So.2d 616, 617 (Fla. 5th DCA 1997) ("The deputies should have had a warrant to arrest Norton in his home and without it, the arrest was illegal.").
For example, in Beauchamp v. State, 742 So.2d 431, 431 (Fla. 2d DCA 1999), the Second District reversed the judgment for possession of marijuana because the police lacked "authority to enter Mr. Beauchamp's dormitory suite without either a warrant or the permission of one of the residents." As that court explained, "[t]he officers might have been authorized to conduct a safety sweep of the suite if they had been lawfully permitted to enter it, but they were not allowed to enter the suite without a warrant for this purpose." Id. at 432 ("Because the officers had no right to enter the suite, nothing observed in the adjoining bedroom may be considered as seen in plain view.").
*647 Here, the trial court's finding that Herrera-Fernandez consented to entry is not supported by the record. Accordingly, we do not reach the second inquiry: whether the subsequent safety sweep exceeded the allowed parameters.
In the instant case, the state's only basis for consent to enter is the non-Spanish speaking agent testifying that he assumed the Spanish-speaking detective "received permission for us to come inside." Significantly, however, the detective's testimony fails to mention any consent from Herrera-Fernandez. Instead, the detective justified the arrest based on him smelling live marijuana: "I decided not to proceed with any other questions and go ahead and place him into custody." Indeed, both officers stated that the arrest occurred inside the residence, with the detective further testifying that they were two feet inside Herrera-Fernandez's home.
The law is well-settled that without consent, a warrant, or exigent circumstances, law enforcement may not cross the threshold to effect an arrest. Because the record fails to support the finding of consent, and no exigent circumstances were present, the warrantless entry and arrest of Herrera-Fernandez amounted to an unreasonable seizure, in violation of the Fourth Amendment. Accordingly, we reverse the trial court's order denying Herrera-Fernandez's motion to suppress.
POLEN and GROSS, JJ., concur.