905 So.2d 1010 (2005)
A.F., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-4081.
District Court of Appeal of Florida, Fifth District.
July 1, 2005.
*1011 James S. Purdy, Public Defender, and David S. Morgan, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
A.F. appeals a judgment of conviction for resisting arrest with violence.[1] She argues that the trial court erred in failing to grant her motion for a judgment of acquittal. We agree and reverse.
The charge against A.F., a fourteen year-old, 117 pound girl, arose when she ran from Officer Ronald Kelly, who was a full time police officer for the Titusville Police Department. On October 18, 2004 he was also working part-time as a security officer at the Windover Oaks Apartments in Titusville. Kelly was wearing sweat pants and a T-shirt, with tennis shoes. He was not wearing his badge, or a shirt that said "Titusville Police Department," and there was nothing else to indicate he was a police officer.
At approximately 2:30 a.m., Kelly responded to a complaint from a resident that someone was swimming in the apartment complex pool, which was closed and locked. Kelly observed A.F. and her friend walking away from the pool area, but because they were dressed, he could not tell whether they had been swimming. Kelly walked toward A.F. and her friend, and began to question them, telling them he was a "courtesy officer." Kelly said the two became belligerent and rude and had a "little confrontation" with him. A.F. took off running at the same time Kelly announced he was a police officer. Kelly started chasing her, again calling out that he was a police officer. He also said "Stop, police." Kelly caught up with A.F., tackled her, and both fell to the ground. Kelly was injured in the fall.
Kelly described A.F. as kicking and screaming; scratching and punching.[2] Because he did not have handcuffs with him, he continued to struggle with her with one hand, and with the other hand called Titusville dispatch on his cell phone. When Titusville police arrived, A.F. was arrested.
*1012 In order to violate section 843.01, Florida Statutes (2004), the person resisting a law enforcement officer must do so knowingly and willfully. A person is not justified in using force to resist a police officer who is "known, or reasonably appears to be a law enforcement officer." Tillman v. State, 807 So.2d 106, 108 (Fla. 5th DCA 2002). But, the accused must have reason to know that the "victim" is an officer. W.E.P., Jr. v. State, 790 So.2d 1166, 1172 (Fla. 4th DCA 2001).
In this case, there was nothing about Kelly's appearance that would reasonably indicate he was a police officer. He was not wearing his uniform, badge, or a shirt that said "Titusville Police Department." He did not have any other identification to show that he was a police officer. Except for his announcement that he was a police officer there was nothing whatsoever to indicate that he was a law enforcement officer, and in fact he had originally identified himself as a "courtesy officer."
Accepting these facts and all inferences from them as true, we do not believe that under these circumstances, the element of this crime that the defendant "knowingly and willfully" resisted an officer was established. The statute provides:
Whoever knowingly and willfully resists, obstructs, or opposes any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Parole Commission or any administrative aide or supervisor employed by the commission; parole and probation supervisor; county probation officer; personnel or representative of the Department of Law Enforcement; or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. (emphasis added)
Our review of this case is de novo, after accepting the trial court's resolution of any disputed facts. J.L.F. v. State, 887 So.2d 432 (Fla. 5th DCA 2004). In this case, the circumstances were such that a person like the defendanta young female, 117 pounds, accosted by an adult male in the early morning hours (2:30 a.m.) who claimed to be a police officer, with no identification and who originally claimed he was a "courtesy officer"should not be imputed with the knowledge he was a police officer. As the fourth district noted in W.E.P. a citizen should not be required to respond with submission any time someone claims to be a police officer. It said:
It is an all too sad fact that persons have been victimized as a result of their trusting criminals who were impersonating police officers to facilitate crimes. See, e.g., Miller v. State, 748 So.2d 327 (Fla. 3d DCA 1999).
REVERSED and REMANDED.
THOMPSON and MONACO, JJ., concur.
NOTES
[1] § 843.01, Fla. Stat. (2004).
[2] Both A.F. and her friend testified that they did not think Kelly was a police officer. A.F. said that she did not know who Kelly was and had never seen him before. When he said he was a courtesy officer she did not believe it because he was in regular clothes and he could just "say something." She ran because Kelly started walking faster after them, and she became afraid. When Kelly tackled her and tried to hold her down, she felt even more frightened. The friend thought Kelly was "just some guy," trying to give them a hard time. When he asked Kelly if he could see his badge or what the number of his badge was, he got no response.