On Mandate from the Supreme Court of Florida

TAYLOR, J.
We reconsider on remand our opinion in Perry v. State, 846 So.2d 584 (Fla. 4th DCA 2003), which was quashed by the Florida Supreme Court following its decision in Tillman v. State, 934 So.2d 1263 (Fla.2006). In Tillman, the supreme court held that section 776.051(1), Florida Statutes, which prohibits the use of force to resist an arrest, regardless of the illegality of a law enforcement officer’s actions, applies only to arrest situations. The court further held that to convict a defendant of *72 battery on a law enforcement officer and resisting an officer with violence for acts committed outside arrest scenarios, the state must prove that the officer was lawfully executing a legal duty.[1]
The issue which the supreme court directed us to address in light of Tillman is whether a strip search performed by an intake booking deputy at the county jail is a part of the arrest process, such that the prohibition in section 776.051(1) against the use of force to resist an arrest applies in this case. In this case, appellant, who was convicted of resisting an officer with violence during an attempted strip search, argues that he was justified in using force to resist the strip search because it was not being lawfully performed. We agree with appellant that the strip search in this case, which deputies attempted at the jail during booking procedures after appellant’s arrest had concluded, was not a part of the arrest process and, further, was not lawfully performed. Because the state failed to prove that the deputies were lawfully executing a legal duty at the time of appellant’s forcible resistance to the search, the trial court erred in denying appellant’s motion for judgment of acquittal.
On September 17, 1998, Deputy Armando Enrique was working as a booking deputy in the central intake division of the main jail in Broward County. His job entailed screening new inmates and introducing them into the system. As part of the booking process, the deputy was required to search the inmates for weapons and contraband and fingerprint and photograph them. The type of search conducted, whether a pat-down or a strip search, depended upon the crime for which the inmate was arrested. An inmate who was arrested for a violent felony involving weapons or a narcotics offense was subject to a strip search. A strip search required the inmate to squat and pull his buttocks apart for inspection.
Appellant was arrested by a Hallandale Beach police officer for a narcotics offense and brought to the main jail. He was placed in the custody of the Broward Sheriffs office and turned over to Deputy Enrique for the booking process. Pursuant to the Broward Sheriffs general policy requiring a strip search for inmates charged with a felony drug offense, the deputy took appellant into the strip search room and ordered him to disrobe for a strip search. The sheriff was not present at that time and, according to Deputy Enrique, he did not need the authorization of anyone at the jail to perform the strip search on appellant.
Once inside the strip search room, appellant complied with Deputy Enrique’s orders to disrobe; but he refused to be searched. Appellant became very loud and verbally abusive, declaring that he would not allow his anal area to be inspected. When Deputy Anton responded to Deputy Enrique’s call for assistance, he saw appellant flailing his arms and yelling in a combative manner. Deputy Enrique grabbed appellant’s arm and appellant fell to the ground. Appellant became violent and started kicking his feet and throwing his hands up at the officers. He punched Deputy Enrique in the face and kicked Deputy Anton in both legs. Eventually, the officers were able to restrain appellant and place shackles on him.
Appellant was tried by jury for battery on a law enforcement officer and resisting *73 an officer with violence. He was acquitted of the battery charge but convicted of resisting an officer with violence. As to the resisting charge, the information alleged that appellant obstructed or opposed Deputies Enrique and Anton, “in the lawful execution of a legal duty then being performed by the said officers, to wit: the detention of [defendant], by the said [defendant] offering or doing violence to the person of the said officers, to-wit: fighting with and striking [them].... ”
At the close of the state’s and the defense case, appellant moved for a judgment of acquittal on both charges, asserting that he could not be convicted of the charges because the strip search he allegedly resisted with violence was not performed in compliance with Florida law and thus the deputies were not lawfully executing their duties. The trial court denied his motion for judgment of acquittal. Appellant filed an appeal of his conviction and "sentence for resisting an officer with violence.
We affirmed appellant’s conviction and sentence for resisting an officer with violence. In so ruling, we relied upon section 776.051(1), Florida Statutes, which prohibits the use of force to resist an unlawful arrest, and disagreed with “appellant’s argument that the rule prohibiting the use of force against a known police officer is limited to an arrest situation.” Perry v. State, 846 So.2d at 587. We noted that courts have applied the prohibition against the use of violence against officers who conducted illegal stops, searches, and detentions. We cited, along with other cases, the fifth district’s decision in Tillman v. State, 807 So.2d 106, 109 (Fla. 5th DCA 2002). There the court held that a defendant was not justified in using violence to resist police officers even though the officers’ entry into the defendant’s residence and subsequent pat-down and detention of the defendant were unlawful. In this case, where the defendant was “already in custody, undergoing post-arrest procedures,” we reasoned that “the prohibition against violently resisting or opposing an officer would apply as well.” Perry, 846 So.2d at 588.
The defendant obtained' review in the Florida Supreme Court. The issue he presented wás whether the statutory prohibition against the use of force to resist an arrest applies apart from arrest scenarios. The supreme court held that if did not and quashed our decision, based upon its decision in Tillman v. State, 934 So.2d 1263 (Fla.2006). The court remanded Perry -for reconsideration, stating:
We must quash the Fourth District’s decision because it is contrary to our construction of section 776.051(1) in Tillman. The Fourth District relied on the Fifth District’s decision in Tillman, which we later quashed, for the proposition that the use of force against a known police officer extends to illegal stops, searches, and detentions. See Perry, 846 So.2d at 587. We expressly rejected this view in Tillman, and cannot permit the same erroneous interpretation of section 776.051(1). to stand here. However, we decline to decide whether an arrest under section 776.051(1) encompasses post-arrest intake procedures such as the strip search in this case. Neither the Fourth District in this case nor this Court in Tillman addressed this issue. This matter, as well as a separate jury instruction issue raised by Perry, are for the Fourth District to address in the first instance under the changed legal landscape of our decision in Tillman.
Perry v. State, 953 So.2d 459, 460 (Fla.2007).
Having received supplemental briefs from the parties, we now address these *74 issues. First, we must decide whether the strip search performed at the jail during intake booking procedures was a part of the arrest process such that the statutory prohibition against the use of force to resist an illegal arrest applies in this case. If we determine that the strip search was not part of the arrest process, we must then decide whether the state presented sufficient proof to allow the jury to find that the deputies were acting “in the lawful execution of a legal duty” when appellant violently resisted their efforts to strip search him. We did not decide this issue before.
At trial, appellant’s defense to the charge of resisting an officer with violence was that he was justified in forcibly opposing the deputies’ unlawful attempts to strip search him. The state, relying on section 776.051(1), Florida Statutes, asserted that this was not a viable defense. Section 776.051(1) provides:
A person is not justified in the use of force to resist an arrest by a law enforcement officer who is known, or reasonably appears, to be a law enforcement officer.
Tillman rejected the state’s position, holding that section 776.051(1), by its plain language, only forecloses the defense of justifiable use of force to a defendant who resists an illegal arrest by a law enforcement officer. 934 So.2d at 1269. It held that the defense is available to a defendant who forcibly resists illegal acts committed by a law enforcement officer outside an arrest scenario. Appellant contends that the strip search he resisted occurred outside an arrest scenario. According to appellant, the deputies did not commence the strip search until after his arrest had concluded and his pre-trial detention had begun.
As appellant points out in his supplementary brief, when an arrest occurs is well-defined, but “the law has failed to produce a definitive parameter for the moment at which the process of arrest ends and some other form of custody begins.” Albritten v. Dougherty County, Ga., 973 F.Supp. 1455, 1459 (M.D.Ga.1997). Tillman did not resolve this issue because the facts in that case involved an illegal detention, or events that preceded an arrest, rather than events that occurred during or after an arrest. Tillman explained that “[sjection 776.051(1) does not address the use of force to resist an officer when there are grounds for an arrest but no actual arrest is taking place.” 934 So.2d at 1270 (emphasis added). This suggests that when the process of arrest is over and is no longer taking place, the prohibition against the use of force to resist unlawful police action does not apply. The difficulty, of course, is determining when an arrest is over.
In J.H.M. v. State, 945 So.2d 642, 645 (Fla. 2d DCA 2006), the Second District considered the question posed here: “How did the Florida Supreme Court intend to define an ‘arrest’ in Tillman? ” In that case, where the police-citizen encounter began as an unlawful detention and escalated into an arrest situation, the court noted the difficulty in applying Tillman because “the distinction in Tillman between arrest and non-arrest cases may not be easily drawn in many common, real world situations.” Id. at 645. The court stated:
We are inclined to believe that the supreme court in Tillman may have intended to use the more formal and technical definition of “arrest” that is used for purposes such as speedy trial. As Justice Bell explained in his concurring opinion in Bulgin v. State, 912 So.2d 307 (Fla.2005):
It is uniformly held that an arrest, in the technical and restricted sense of *75 the criminal law, is “the apprehension or taking into custody of an alleged offender, in order that he may be brought into the proper court to answer for a crime.” Cornelius, Search and Seizures, 2nd ed., Sec. 47. When used in this sense, an arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.
Id. at 313-14 (Bell, J., concurring); see also Melton v. State, 75 So.2d 291, 294 (Fla.1954).
Id. at 645-46.
We believe that the above concept of an arrest as “the apprehension or taking into custody of an alleged offender” does not extend to post-arrest intake procedures, such as booking. These events usually occur after the suspect has been securely placed in custody and turned over to the jailors. Although it is tempting to include post-arrest intake procedures within the ambit of section 776.051(1) to promote the public interest in protecting law enforcement officers from violence when performing their duties in detention facilities, we are constrained by the plain and unambiguous language of the statute. In construing statutes, we must first consider the plain meaning of the language used. Tillman, 934 So.2d at 1269. “When the language is unambiguous and conveys a clear and definite meaning, that meaning controls unless it leads to a result that is either unreasonable or clearly contrary to legislative intent.” Id. Further, because we are construing a statute that is penal and in derogation of the common law, which permitted reasonable force to resist an illegal arrest, we must strictly construe the statute in favor of the accused. See Tillman, 934 So.2d at 1269; McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998); Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991).
In enacting section 776.051(1), the legislature could have extended protection to law enforcement officers in other types of police-citizen encounters but decided to do so only in arrest situations. See Tillman, 934 So.2d at 1269-71. Apparently, its main concern was to prevent those who feel they have been wrongly accused from conducting their defense by physical battle when an arrest is attempted. See K.G. v. State, 338 So.2d 72, 74 (Fla. 3d DCA 1976). If this is what the legislature intended to deter, then the “arrest” line should be drawn at the point where the suspect is peaceably in custody. In most cases this will occur when the suspect has been handcuffed and placed in the back of the patrol car. See State v. Roy, 944 So.2d 403 (Fla. 3d DCA 2006) (analyzing the defendant’s felony charges for battery on a law enforcement officer and resisting an officer with violence under Tillman and concluding that the defendant’s resistance to being handcuffed and act of striking the officer while being placed in the patrol car occurred during an arrest); see also Grant v. State, 366 So.2d 843 (Fla. 1st DCA 1979) (holding that defendant could not be guilty of resisting arrest with violence where violence erupted well after he had peaceably been placed in the back seat of a patrol car).
*76 We hold that .the prohibition against the use of force to resist an arrest under section 776.051(1) does not apply to post-arrest intake procedures such as the strip search in this case. Here, it is undisputed that appellant was arrested by city police officers, then transported to the county jail and turned over to the custody of the Sheriffs Office for processing. The arresting officers did not remain on the scene, and some period, of time passed between the time the officers deposited appellant at the jail and the deputies initiated the booking process and attempted to strip search appellant. Under these facts and circumstances, the process of arrest had clearly ended and appellant’s detention had begun.
Thus, to convict appellant for resisting an officer with violence, the state had to prove that Deputies Enrique and Anton were acting “in the lawful execution of a legal duty” when they attempted to strip search appellant. See Tillman, 934 So.2d at 1266 (holding that “[i]n non-arrest cases, in order to convict a defendant under sections 784.07 and 843.01, Florida Statutes (2005), which define the crimes of battery on a law enforcement officer and resisting an officer with violence, the State must prove that the officer was ‘engaged in the lawful performance of his or her duties’ or ‘in the lawful execution of any legal duty.’ ”) (footnote omitted).
The supreme court explained in Tillman that “[i]n ruling on the sufficiency of the evidence to reach the jury on this element ... trial courts should rely on the statutory and decisional law governing the particular duty in which the officer is engaged.” Id. Because appellant’s violent resistance to Deputies Enrique and Anton occurred during their attempt to strip search appellant at the Broward main jail, we must evaluate the sufficiency of the evidence on the lawful execution element of the resisting charge by applying Florida law governing strip searches.
Section 901.211, Florida Statutes (1997), governs strip searches and “codifies minimum acceptable standards of conduct for law enforcement officers conducting strip searches in Florida.” D.F. v. State, 682 So.2d 149, 153 (Fla. 4th DCA 1996). Subsection (5) of the statute states:
No law enforcement officer shall order a strip search within the agency or facility without obtaining the written authorization of the supervising officer on duty.
§ 901.211(5), Fla. Stat. (1997). “A strip search conducted in violation of the statutory requirements set forth in section 901.211, in essence, establishes police misconduct and constitutes a Fourth Amendment violation.” State v. Augustine, 724 So.2d 580, 581 (Fla. 2d DCA 1998).
Here, the state failed to establish that the strip search was performed in compliance with Florida statutory and de-cisional law. The state failed to introduce any evidence that the on-duty supervising officer gave written authorization for the detention deputies to perform a strip search upon appellant. Deputy Enrique testified that the only authority he had to conduct the strip search was a written, general jail policy on such searches adopted by the elected Broward Sheriff. A policy or procedure adopted by the sheriff does not control over state law.
Because the state failed to prove that the deputies complied ’ with section 901.211(5), it failed to prove that they were acting “in the lawful execution of any legal duty” when they attempted to strip search appellant. The trial court thus erred in denying appellant’s motion for a judgment of acquittal.[2] Accordingly, we reverse ap *77 pellant’s conviction and sentence for resisting an officer with violence and remand with directions to discharge appellant.

Reversed and Remanded.

KLEIN and GROSS, JJ., concur.

. In deciding Tillman, the supreme court resolved a conflict between the districts on this issue. The court quashed the fifth district’s decision in Tillman v. State, 807 So.2d 106 (Fla. 5th DCA 2002), and approved the first district’s holding in Taylor v. State, 740 So.2d 89 (Fla. 1st DCA 1999).

. Our resolution of this issue renders the jury instruction issue raised by appellant moot.