MAY, J.
An altercation in the jail brings this case to us. The defendant appeals his conviction and sentence for battery on a law enforcement officer. He claims three errors in the trial court’s rulings: (1) permitting improper cross-examination of the defendant concerning his criminal history; (2) giving confusing and misleading jury instructions; and (3) denying his motion to strike his aliases from the information. We find merit in all three and reverse.
*1147 A detention deputy was helping dispense medication to inmates when the defendant began yelling that he wanted his medication. The deputy told the defendant to calm down, entered the cell, and escorted the defendant to his bed. The defendant sat on the bed, but continued shouting. When the deputy attempted to handcuff him, the defendant resisted.
Another deputy entered the cell to assist. He told the defendant that he would use pepper spray if he did not stop resisting. The defendant appeared to calm down, but as the first deputy turned away, the defendant aggressively grabbed the first deputy’s wrist and jacket. Fearing for his safety, the deputy pulled away and struck the defendant several times in the face. The defendant then kicked the deputy, causing injuries. Other personnel responded and handcuffed the defendant. The incident was recorded on the jail’s surveillance cameras; the video was played at the defendant’s trial.
The State charged the defendant with battery on a law enforcement officer. The information included two of the defendant’s aliases. The defendant moved to strike the aliases from the information, but the trial court denied the motion.
At the beginning of the trial, the court read the information as written, including the defendant’s aliases. During voir dire, three potential jurors were troubled by the defendant’s aliases, including one who indicated that she could not be unbiased because of them. However, none of those jurors were ultimately selected.
The defendant testified at trial. During direct examination, the following exchange took place:
Q: And how many crimes have you been convicted of?
A: Possibly eight.
Q: Eight crimes. And an additional one of those crimes, any crimes of dishonesty?
A: Possibly.
On cross examination, the State asked about the defendant’s prior convictions:
Q: Mr. Tilus, have you ever been convicted of a felony?
A: Yes, sir.
Q: And how many times have you been convicted of a felony?
A: Possibly eight, nine.
Q: Possibly or is it certainly?
A: Possibly.
DEFENSE COUNSEL: Can we have a side bar and discuss this?
THE COURT: Rephrase it.
Q: Have you been convicted of at least eight felonies?
A: Yes, sir.
Q: Have you been convicted of a misdemeanor crime involving dishonesty?
A: Possibly.
Q: Have you been convicted of at least one crime involving a misdemeanor of dishonesty?
A: Possibly.
THE STATE: May I proceed, Your Honor?
Q: Back in 2002. Do you remember committing the offense of Unlawful Use of a Name?
A: I was arrested and charged with those charges, yes.
Q: Were you convicted of that crime?
A: I pleaded out to it.
Q: Is that a yes or a no?
A: Pleaded out no contest, yes.
Q: Are there others—
DEFENSE COUNSEL: Objection.
THE COURT: Overruled.
*1148 A: Possibly, I don’t know. I can’t date back, I can’t keep track of all of my records. I don’t have a document.
Q: If I showed you the disposition form—
DEFENSE COUNSEL: I’m going to object to the improper impeachment. Request a side bar?
THE COURT: Approach.
THE STATE: He was just saying ... I should be allowed to go into the cases because he said possibly on that. He said maybe admitted nine.
THE COURT: You can as far as I’ll let you go and you can finish up by saying so at least eight times you’ve been prior convicted. Then move on.
Q: Mr. Tilus, so you’ve been convicted of at least eight felonies and one misdemeanor crime involving dishonesty; is that correct?
A: Possibly, sir, yes.
Q: Possibly. Is it yes or possibly?
A: Possibly. Because I don’t have the actual documents in front of me, so I couldn’t tell you exactly yes.
THE COURT: The door is open now.
THE STATE: All right.
The State then, over defense objection, continued to question the defendant about the details of his prior convictions: two for battery on a law enforcement officer, two for resisting an officer without violence, two for possession of cocaine, two for trespass, one for aggravated assault with a deadly weapon, one for unlawful use of an identification, one for attempted tampering with evidence, and one for delivery of cocaine.
Prior to jury deliberation, the court instructed that one of the elements the jury had to find was that the deputy “was engaged in the lawful performance of his duties when the battery was committed.” During deliberations, the jury asked for the definition of “lawful performance of his duties.” -In response, the trial court stated: “The Court now advises you that these are not specific terms of art. You are to apply your ordinary and common understanding of the meaning of those words.” Further, over defense objection, the trial court gave an additional instruction:
[A] person is not justified in the use of force to resist a law enforcement officer who is engaged in the execution of a legal duty, if the law enforcement officer was acting in good faith and he is known or reasonably appears to be a law enforcement officer. A law enforcement officer, or any person whom the officer has summoned or directed to assist them, is not justified in the use of force [if] the execution of a legal duty is unlawful and known by him to be unlawful.
Thereafter, the jury asked for “clarification if ‘lawful’ means an appropriate or effective performance of duties within the guidelines of BSO. Do we as jurors decide if the officer was lawful in his performance of duties?” The trial court, again over defense objection, gave the jury a written response: “The term ‘lawful’ does not refer to appropriate or effective. ‘Lawful’ as used in the instruction means legal and not illegal or unlawful.”
The jury found the defendant guilty. The trial court sentenced him to fifty months’ imprisonment. From his conviction and sentence, the defendant now appeals.

Improper Cross-Examination

The defendant argues that the State was allowed to improperly impeach him by using details of his prior convictions. The State responds that the defendant opened the door by attempting to mislead the jury about the number of his convictions. We disagree with the State.
*1149 We review the trial court s eviden-tiary rulings concerning the defendant’s prior convictions for an abuse of discretion. See Stallworth v. State, 53 So.3d 1163, 1165 (Fla. 1st DCA 2011).
“A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment-” § 90.610, Fla. Stat. (2012). “Unless the witness answers untruthfully, this inquiry is generally restricted to the existence of prior convictions and the number of convictions.” Fotopoulos v. State, 608 So.2d 784, 791 (Fla.1992). “Even where the witness denies the conviction, the specific offense is identified only incidentally when the record of the conviction is offered into evidence.” Sneed v. State, 397 So.2d 931, 933 (Fla. 5th DCA 1981) (citing Fulton v. State, 335 So.2d 280, 284 (Fla.1976)).
“However, when a defendant attempts to mislead or delude the jury about his prior convictions, the State is entitled to further question the defendant concerning the convictions in order to negate any false impression given.” Fotopoulos, 608 So.2d at 791. Or, if a defendant tries to characterize his or her prior convictions in a favorable light, the door is opened to further inquiry regarding the convictions. Baker v. State, 102 So.3d 756, 759 (Fla. 4th DCA 2012). Neither of those circumstances occurred here.
We find this case similar to Stallworth v. State. There, the witness gave the following testimony:
Q. Now, Mr. Ducree, have you ever been convicted of a felony?
A. Yes, I have.
Q. How many times?
A. Numerous of times.
You don t know how many times? G?
I think you mentioned it earlier. <⅞
Would eight times sound right? <3?
Could be right. <ri
I’m sorry. <3?
It could be right. <\
Stallworth, 53 So.3d at 1164. Following this line of questioning, the prosecutor asked about the details of the convictions. Id. at 1164-65.
The First District held that the witness’s responses were not false, and did not constitute incorrect information. Id. at 1166. “Because [the witness] did not deny his prior convictions or the number of convictions, and did not otherwise mislead the jury, the trial court erred by allowing the State to further question him regarding his felony record.” Id. The proper method to impeach a witness who provides inaccurate or misleading information regarding prior convictions is to admit certified copies of the convictions. Id.
Similarly here, the defendant did not give misleading information or attempt to downplay his convictions. He simply responded “possibly” when asked about the number of his convictions. He explained that he could not “keep track of all of his records” because he did not “have the actual documents in front of [him], so [he] couldn’t tell [the prosecutor] exactly yes.”
The defendant did not open the door. The State should not have been allowed to question the defendant about the specifics of his prior convictions. The trial court abused its discretion in permitting the State free rein in cross-examining the defendant concerning his prior convictions. We therefore reverse on this issue.

*1150
The Jury Instructions

The defendant next argues that the trial court’s responses to the jury’s questions concerning the lawfulness of the deputy’s duties were misleading and confusing. The State responds that the court’s instructions were correct and denies they were misleading or confusing. Once again, we disagree with the State.
A trial court’s charge to the jury comes to the appellate court with a presumption of correctness. Carter v. State, 6 So.3d 106, 107 (Fla. 4th DCA 2009). We review the giving of additional instructions for an abuse of discretion. King v. State, 59 So.3d 272, 274 (Fla. 4th DCA 2011) (citing Perriman v. State, 731 So.2d 1243, 1246 (Fla.1999)).
“A trial judge is not restricted to the written jury instructions when a jury poses a question during its deliberations, and may clarify a point of law for a confused jury with a brief, clear response.” McGirth v. State, 48 So.3d 777, 788 (Fla.2010). However, a court commits reversible error “when an instruction is not only an erroneous or incomplete statement of law, but is also confusing or misleading.” McKenzie v. State, 830 So.2d 234, 236-37 (Fla. 4th DCA 2002). “[T]he inquiry is whether the jury might reasonably have been misled.” Id. at 237.
Here, the defendant was charged with battery on a law enforcement officer. One of the elements of the crime is that the officer was lawfully executing a legal duty. Perry v. State, 968 So.2d 70, 71-72 (Fla. 4th DCA 2007).
Telling the jury that it must determine the “lawfulness” or “unlawfulness” of the police behavior, without more, as was proposed here, does nothing to further the ends of justice. Unfortunately, there is no standard instruction appropriate to all circumstances so courts have struggled with these instructions. The court must avoid an instruction that is tantamount to directing a verdict on the issue, but the court should decide all applicable issues of law and properly instruct the jury so that it can decide disputed issues of fact and apply the facts to the law.
Brown v. State, 36 So.3d 826, 829-30 (Fla. 5th DCA 2010).
The court properly instructed the jury on the elements of battery on a law enforcement officer. During deliberations, however, the jury asked the meaning of “lawful performance of his duties.” The court responded, over defense objection, with an incomplete, incorrect and misleading instruction.
The court’s instruction on use of force correctly stated the law concerning the use of force when a defendant is charged with resisting arrest, pursuant to section 776.051, Florida Statutes (2010). But the defendant was not charged with resisting arrest; he was charged with battery on a law enforcement officer. The instruction injected the issue of “good faith” where it did not belong.
Defense counsel called the court’s attention to the fact that the instruction did not answer the jury’s question, which became clear when the jury again asked for clarification on the meaning of “lawful.” This time, the trial court, again over defense objection, gave the jury a written response. “The term ‘lawful’ does not refer to appropriate or effective. ‘Lawful’ as used in the instruction means legal and not illegal or unlawful.”
In short, the instructions failed to inform the jury how they could determine whether the deputy was lawfully executing his duties. Simply telling the jury that “lawful” means “legal” was incomplete, and the instruction on “good faith” was incor *1151 rect and misleading.[1] We therefore reverse on this issue.

The Information and the Aliases

Finally, the defendant argues the trial court abused its discretion by allowing the defendant’s aliases to remain on the information because they were prejudicial. The State responds that no Florida case has held that admission of aliases is reversible error. This issue alone may not have warranted a reversal but, because the ease may be retried, we direct the trial court to eliminate any concern over the use of the irrelevant and potentially harmful aliases in this case.
We review this issue under an abuse of discretion standard. Ray v. State, 755 So.2d 604, 610 (Fla.2000).
‘While there appear to be few reported cases on the point, all agree that such use of aliases may be derogatory to the reputation of the defendant, and should be avoided, but that the question of whether prejudicial error exists should be determined by the surrounding circumstances of the case.” A.G. Barnett, Annotation, Propriety and effect, in criminal case, of use of alias of accused in instructions to jury, 87 A.L.R.2d 1217 (1963).
As the Third Circuit has noted:
Another practice which provokes comment is that of loading a defendant with a long list of aliases. This, it is true, may afford protection to a defendant, if called upon to prove former jeopardy. None the less the string of aliases may be so arranged as to carry the implication that the defendant belongs to the so-called criminal class and thus half convict him as soon as the indictment is disclosed to the jury.
D'Allessandro v. United States, 90 F.2d 640, 641 (3d Cir.1937) (affirming the conviction because the issue was unpre-served). In Lee v. State, 410 So.2d 182 (Fla. 2d DCA 1982), the Second District reversed, finding the use of the defendant’s aliases “particularly harmful” where the State elicited the aliases from a detective who testified that he obtained the names from the defendant’s FBI “rap sheet.” Id.
We think the same is true here. During voir dire, at least three jurors expressed concern over the defendant’s aliases, and the aliases were not relevant to the charge. If the case is retried, the trial court should strike the aliases from the information.

Reversed and Remanded for a New Trial.

GERBER and CONNER, JJ., concur.

. The State claims the error was harmless. We disagree. As the beneficiary of the error, the burden is on the State to prove beyond a reasonable doubt that the incomplete instruction did not contribute to the verdict; it has failed to do so. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).